Filed 5/22/26  P. v. Pennisi CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID SEBASTIAN PENNISI,<br>        Defendant and Appellant. | C102925<br><br>(Super. Ct. No. 23CF01655) |

A jury convicted defendant David Sebastian Pennisi of assault with intent to commit rape during a burglary.  The trial court sentenced him to 14 years to life in prison.

Defendant now contends the trial court abused its discretion in admitting uncharged sexual offense evidence under Evidence Code section 1108.[1]  Finding no abuse of discretion, we will affirm the judgment.

BACKGROUND

In February 2023, M.R. and N.S. were living together.  Defendant was an acquaintance of theirs, and they allowed him to temporarily stay with them and sleep on the couch in the living room.

---

[1]  Undesignated statutory references are to the Evidence Code.

On the morning of February 20, 2023, after N.S. left for work, M.R. woke up in her room and felt the edge of her bed go down. M.R. saw defendant crawling up the bed towards her on all fours, wearing a shirt "and nothing else," causing her to feel threatened and afraid. M.R. asked defendant what he was doing and put her foot up to his chest to stop his advance. Defendant told her, "Make love to me" and she responded, "No, get the fuck out." Defendant kept trying to crawl up towards her until his body was hovering over hers and his hands were close to her hips. Defendant kept repeating, "Make love to me, it's life or death," and she kept responding, "No, get out." At one point defendant told her, "then I'm going to rape you."

M.R. remembered that N.S. said he put a handgun in her nightstand. She grabbed the gun, pointed it at defendant, and told him to get out. Defendant said okay and exited the bedroom. M.R. called N.S. and told him that defendant tried to rape her. N.S. returned home, found defendant putting his pants back on, and directed him to get out of his house. After defendant left, N.S. found M.R. leaning against the window with the gun in her lap, crying, shaking, and scared. N.S. later received a text message from defendant apologizing for what he had done that night.

The People charged defendant with assault with the intent to commit rape during a burglary (Penal Code § 220, subd. (b)). The information also alleged three prior strike convictions in 2000 in Jackson County, Oregon, for second degree sexual abuse in case No. 99-3167-FE, attempted rape in case No. 99-2280-FE, and first degree burglary in case No. 99-2181-FE, matters we describe because they are relevant to the contention on appeal.

In Oregon Case No. 99-3167-FE, defendant pleaded guilty to sexual abuse in the second degree (Or. Rev. Stats. 163.425) based on conduct alleged to have occurred between December 1998 and May 1999. He was sentenced to 20 months in custody. In articulating the factual basis for the plea, defendant said the state would present [C.H.'s] testimony that defendant had sexual intercourse with her without her consent.

2

In Oregon Case No. 99-2280-FE, T.W. stated that on May 1, 1999, she was walking home late at night when defendant grabbed her from behind, put his arm around her waist, pulled her hair, and covered her mouth. He tried to pull her by her waist and hair into a nearby empty field. She began fighting to get away and eventually ran from him. Defendant was convicted of attempted rape (Or. Rev. Stats. 161.405/163.375) and sentenced to 30 months in custody.

And in Oregon Case No. 99-2181-FE, T.H. stated that on May 10, 1999, she was working as a maid at a hotel. While vacuuming one of the rooms, defendant came up behind her, covered her mouth, and threw her on the bed. She felt she had to fight, "kicked him upside his face," and left the room. Defendant pleaded guilty to first degree burglary (Or. Rev. Stats. 164.225) and he was sentenced to 36 months in custody.

Before trial in the instant case, the People moved, under section 1108, to admit evidence of defendant's prior sexual conduct based on the Oregon convictions. Defendant objected. The trial court ruled that the evidence was admissible under section 1108, and that its probative value was not outweighed by undue prejudice under section 352, explaining:

"With regard to the probative value, it's generally increased by similarity between the charged offense and other offenses; and there does appear to be a high degree of similarity between what's alleged in this case and the prior convictions where Mr. Pennisi has been convicted of taking advantage of circumstances and women in one case, a maid in a hotel room, another a woman just walking down the street and the third somebody that was in some kind of a residential facility with him.

"Proximity in time is something that factors into the probative value. These offenses all occur in the same timeframe, May 1999. One over a period of time, the other two fairly close in time overlapping the other one, 23 years before the charged conduct in this case.

3

"But the record establishes that he was incarcerated for a 13-year prison sentence and then there was some other indication that he had served other prison time for a parole violation or some other offense in another state. [¶] So the fact that he was incarcerated for the majority of the 23 years certainly does factor into the 352 analysis.

"Based on the evidence as [the People] expect[] it, admitting the evidence with regard to the three priors would not result in an undue consumption of time, confusion of the issues or misleading the jury.

"The prior conduct it's all previous convictions. So the jury won't be tempted to want to punish Mr. Pennisi for prior behavior. He had already been convicted and sentenced on those prior incidents so would have no burden to defend against those convictions here. [¶] … [¶]

"Another thing that the Court looks at under 352 is the nature of the prior offense and whether it would be inflammatory such that it would likely invoke a stronger emotional reaction than the charged offense. [¶] The conduct and the allegations are all generally of the same class and nature. The one that might be more inflammatory is C.H. where there was a conviction of actual sexual abuse, not just attempted abuse; but she is not going to be testifying. [¶] So the evidence with regard to that incident will only be based on the record of conviction which would tend to limit any inflammatory factors with regard to that matter."

During trial, the jury heard testimony from T.W. and T.H., who testified to defendant's assaults against them in 1999. The trial court also admitted evidence of defendant's conviction in Oregon case No. 99-2280-FE, and his guilty pleas and convictions in Oregon case Nos. 99-2181-FE and 99-3167-FE.

At the conclusion of the evidence, the jury was instructed with CALCRIM No. 1191A as follows:

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed

or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit assault with intent to commit rape while committing first degree burglary, as charged here. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of assault with intent to commit rape while committing first degree burglary. The People must still prove the charge beyond a reasonable doubt."

The jury convicted defendant of assault with intent to commit rape during a burglary, and the trial court sentenced him to 14 years to life in prison.

## DISCUSSION

Defendant contends the trial court abused its discretion in admitting evidence of the uncharged sexual conduct because the conduct was not sufficiently similar to the charged conduct, it was too remote, and it was unduly prejudicial.

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity. (§ 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But section 1108 is an exception to that general rule. (*People v. Erskine* (2019) 7 Cal.5th 279, 295.) Under section 1108, the trier of fact may consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses and that the defendant committed a charged sexual offense. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164, 1166-1167.)

Nevertheless, uncharged sexual offense evidence is inadmissible if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (§§ 352, 1108, subd. (a).) In evaluating whether the probative value of the uncharged offense evidence outweighs any prejudice from its admission, a trial court must "consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing,

5

misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).)

The weighing process under section 352 is entrusted to the sound discretion of the trial judge, who is in the best position to evaluate the evidence. (*Falsetta, supra*, 21 Cal.4th at pp. 917-918.) We review a trial court's section 352 and 1108 determinations under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

We conclude the trial court did not abuse its discretion in admitting the prior sexual conduct evidence. Although admissibility under section 1108 does not require the uncharged and charged sex offenses to be similar (*People v. Jones* (2012) 54 Cal.4th 1, 50), in all four incidents, defendant sought to have sex with a nonconsenting adult female, and in one case did so. The uncharged offense evidence was therefore probative of defendant's propensity and intent to commit the charged offense and also the credibility of defendant and M.R. (See *Falsetta, supra*, 21 Cal.4th at p. 922 [stating that other crimes evidence may be considered for any proper purpose]; see *People v. Holford* (2012) 203 Cal.App.4th 155, 182 [stating that section 1108 recognizes that evidence of uncharged sexual offenses is uniquely probative in cases involving sex crimes]; *People v. Branch* (2001) 91 Cal.App.4th 274, 282 ["evidence of a 'prior sexual offense is indisputably relevant in a prosecution for another sexual offense' "].) Uncharged sexual offense evidence is highly probative where, as here, defendant denies that the charged

6

offense occurred and there is no forensic evidence proving that it did.  (*People v. Robertson* (2012) 208 Cal.App.4th 965, 993 (*Robertson*).)

Further, the uncharged offenses were not more inflammatory than the charged offenses, as found by the trial court, with the exception of the sexual abuse conviction, for which only the record of defendant's plea and conviction were introduced.  Moreover, all the uncharged offenses resulted in convictions, and the trial court instructed the jury on the limited use of uncharged offense evidence.  (See *People v. Phillips* (2022) 75 Cal.App.5th 643, 676; *Falsetta, supra*, 21 Cal.4th at p. 920.)

We also disagree with defendant's contention that the uncharged offenses were too remote in time to be admissible.  Defendant's sexual offenses more than 20 years before his attempted abuse of M.R. tended to show the long-term persistence of his opportunistic propensity (see *People v. Frazier* (2001) 89 Cal.App.4th 30, 41), and "[n]umerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred decades before the current offenses."  (*Robertson, supra*, 208 Cal.App.4th at p. 992 [citing cases].)  In addition, as the trial court noted, defendant was incarcerated during a substantial period of time between the current offense and the uncharged conduct.  (See, e.g.,  *People v. Walker* (2006) 139 Cal.App.4th 782, 807 [similarities between charged and uncharged conduct and the defendant's incarceration for about 11 years offset any prejudice from the remoteness of a 20-year-old uncharged conduct].)

Although not discussed by defendant, there was also no indication that presenting the uncharged conduct evidence to the jury would require an undue consumption of time at the trial.  Indeed, the uncharged conduct evidence ultimately occupied only about 15 pages of the reporter's transcript.

Defendant refers to his rights under the United States Constitution, but he provides no argument that his rights were violated even if the evidence did not violate sections 1108 or 352.  In any event, we conclude the admission of defendant's past sexual

acts did not violate his federal constitutional rights.  (See, e.g., *Falsetta, supra*, 21 Cal.4th at pp. 912-922 [rejecting due process challenge to section 1108].)

DISPOSITION

The judgment is affirmed.

/S/ _____
MAURO, Acting P. J.

We concur:

/S/ _____
RENNER, J.

/S/ _____
FEINBERG, J.