Filed 4/21/15  P. v. Harris CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>FREDRICK HARRIS,<br><br>　　　Defendant and Appellant. | B255195<br><br>(Los Angeles County<br>Super. Ct. No. NA096559) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard R. Romero, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Fredrick Harris was convicted by a jury of robbery and aggravated assault. On appeal Harris contends the trial court erred in admitting evidence of a prior uncharged attempted robbery. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An amended information charged Harris with second degree robbery (Pen. Code, § 211)[1] and assault with a deadly weapon (§ 245, subd. (a)(1)). As to both counts it was specially alleged Harris had personally inflicted great bodily injury (§ 12022.7, subd. (a)). Harris pleaded not guilty and denied the special allegation.

2. *The Trial*

Paul Snyder testified at trial he was at the Metro Blue Line station in Long Beach around 4:00 a.m. on October 4, 2012, sitting cross-legged on the platform with his backpack. He was recharging his cell phone and ankle monitoring bracelet when Harris approached and said, "Sorry, old man, I need a phone." Harris then grabbed Snyder's cell phone and punched him. As Snyder moved away, Harris attempted to kick him. A flashlight fell out of Snyder's backpack; Harris picked it up; and, standing behind Snyder, he used it to hit Snyder on the head. Snyder fled, screaming for help. Harris took the backpack and ran. The wound on Snyder's head required four staples and left a two-inch scar. A video recording of the incident from a station surveillance camera was played for the jury.

The prosecutor, over Harris's objection, introduced evidence that on October 5, 2012, the day after the incident with Snyder, Janet Cuevas and Robert Gorbea were attacked by Harris on a Metro Blue Line train. Both Cuevas and Gorbea testified at trial. Gorbea was riding the Blue Line around 8:00 a.m. when he heard Harris shouting profanity at other passengers. Cuevas was sitting on the train with her purse on her lap, applying makeup, as she usually does while riding the train to work. Cuevas noticed Harris standing a seat away from her, staring at her and mumbling to himself, which

---

1   Statutory references are to this code unless otherwise indicated.

made Cuevas feel uncomfortable.  Cuevas stood up to press the emergency button to alert the train operator, and Harris punched her in the face.  Cuevas fell back into her seat, and Harris advanced on her again.  Gorbea intervened and pushed Harris away from Cuevas.  At the next station Gorbea took Harris off the train and told him to wait for the police to come.  Harris hit Gorbea; the two men scuffled; and Gorbea placed Harris in a choke-hold until the police arrived.

The issue of intent was central to Harris's trial.  His defense theory was that he suffered from mental illness, never intended to steal Snyder's property and believed he was acting in self-defense in striking Snyder.  In view of the disputed issue of intent, the trial court ruled following a pretrial hearing pursuant to Evidence Code section 402 that evidence of the October 5, 2012 incident was admissible to show Harris's intent on October 4, 2012, and its probative value was not outweighed by any prejudicial effect.  The court also provided a limiting instruction to the jury on its use of this evidence.[2]

Harris testified in his own defense.  He explained he saw Snyder on the platform as he approached the station in the early hours of October 4, 2012.  Before Snyder sat down, he first threw a powder-like substance that missed Harris and then, as Harris walked by, threw a poison-like substance that struck Harris and burned the inside of his nose.  Harris admitted attacking Snyder in self-defense because Snyder had assaulted him first by throwing a harmful substance.  Harris also acknowledged he had picked up Snyder's cell phone and flashlight.  However, once Harris realized the cell phone was not a Taser or a gun, he threw it on the ground.  He kept the flashlight because he did not

---

2     The court instructed the jury in accordance with CALCRIM No. 375 that, if it found by a preponderance of the evidence that Harris had committed the uncharged offenses of attempted robbery and assault, it may consider the evidence solely for the purpose of deciding whether Harris "acted with the intents required in this case.  [¶]  In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and charged offenses.  [¶]  Do not consider this evidence for any other purpose.  [¶]  Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

3

want to be harmed with it. Harris denied he had intended to take Snyder's cell phone or flashlight when he approached him.

With respect to the October 5, 2012 incident, Harris testified he saw Cuevas on the train on the morning of October 5, 2012. She was filing her nails and throwing the "dust" or nail filings in Harris's direction. Harris explained to Cuevas that her nail filings were getting on him and asked her to stop, but she intentionally continued to throw the dust in his direction to make him angry. Harris admitted hitting Cuevas in the face after she threw her fingernail dust at him as they were getting off the train and hitting Gorbea after Gorbea refused to take his hands off him. Harris denied he had intended to take any of Cuevas's property.

Dr. Haig Kojian, a forensic psychologist, interviewed Harris twice, about one year after the incident, and performed psychological tests and personality assessments. In Dr. Kojian's opinion Harris was suffering from a delusional disorder of the persecutory type; he was paranoid, believing people intended to harm him. According to Dr. Kojian, Harris's behavior toward Snyder was consistent with that disorder.

3. *The Verdict and Sentence*

The jury found Harris guilty of second degree robbery and assault with a deadly weapon and found true the great bodily injury enhancement. The trial court sentenced Harris to an aggregate state prison term of six years, the middle term of three years for robbery plus three years for the great bodily injury enhancement and imposed statutory fines, fees and assessments. The court stayed sentencing on assault with a deadly weapon under section 654.

4

## DISCUSSION

1. *General Principles Governing Evidence of Uncharged Misconduct*

California law has long precluded use of evidence of a person's character (a predisposition or propensity to engage in a particular type of behavior) as a basis for an inference that he or she acted in conformity with that character on a particular occasion: Evidence Code section 1101, subdivision (a),[3] "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Indeed, "'[t]he rule excluding evidence of criminal propensity is nearly three centuries old in the common law.'" (*People v. Falsetta* (1999) 21 Cal.4th 903, 913.)

Evidence Code section 1101, subdivision (b),[4] clarifies, however, that this rule "does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt, supra,* 7 Cal.4th at p. 393; accord, *People v. Jones* (2013) 57 Cal.4th 899, 930; *People v. Edwards* (2013) 57 Cal.4th 658, 711; see *People v. Falsetta, supra*, 21 Cal.4th at p. 914 ["the rule against admitting evidence of the defendant's other bad acts to prove his present conduct [is] subject to far-ranging exceptions," citing Evid. Code, § 1101, subd. (b)].) "'[E]vidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common

3      Evidence Code section 1101, subdivision (a), provides, "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

4      Evidence Code section 1101, subdivision (b), provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes [citation] . . . only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.'" (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.) The least degree of similarity between the uncharged act and the charged offense is required to prove intent. (*Ewoldt*, at p. 402; *Jones,* at p. 930.) "For this purpose, the uncharged crimes need only be 'sufficiently similar [to the charged offenses] to support the inference that the defendant . . . "'probably harbor[ed] the same intent in each instance."'" (*People v. Kipp* (1998) 18 Cal.4th 349, 371; accord, *Ewoldt*, at p. 403.)

In addition to its relevance to an issue other than predisposition or propensity, to be admissible under Evidence Code section 1101, subdivision (b), the probative value of the evidence of the uncharged crimes "must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Kipp, supra*, 18 Cal.4th at p. 371; accord, *People v. Carter, supra*, 36 Cal.4th at p. 1149.)

The trial court's determination of the admissibility of evidence of uncharged offenses is reviewed for abuse of discretion. (*People v. Kipp, supra*, 18 Cal.4th at p. 369 ["[o]n appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion"].) Likewise, whether the probative value is outweighed by the prejudicial effect of the evidence is subject to abuse-of-discretion review. (*People v. Davis* (2009) 46 Cal.4th 539, 601; *People v. Gray* (2005) 37 Cal.4th 168, 202.)

2. *Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Harris's Prior Uncharged Attempted Robbery To Prove Intent*

Harris contends the incident with Cuevas was too dissimilar to the charged robbery of Snyder to be relevant to the issue of intent. In particular, there was no evidence he intended to steal Cuevas's purse or that he struck her in self-defense. As the trial court explained in admitting the evidence, however, the events of October 5, 2012 shed light on those of the prior day: Harris's intent at the time of the offenses was the

6

critical issue.[5]  The defense theory was Harris's crimes were driven by mental illness. Evidence of the attempted robbery of Cuevas on the morning after the robbery of Snyder, during which Harris again attacked a preoccupied victim with visible personal property, directly contradicted that contention, suggesting in both instances Harris had acted with the specific intent to commit robbery against vulnerable targets holding personal possessions at the Metro Blue Line station or on the train.  While not identical, the offenses were sufficiently similar to meet the relatively minimal standard required by Evidence Code section 1101, subdivision (b).  (See *Ewoldt*, *supra*, 7 Cal.4th at p. 403; *People v. Kipp, supra,* 18 Cal.4th at p. 371.)  The trial court's determination that such evidence was admissible and not more prejudicial than probative was well within its discretion.[6]

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.                                    IWASAKI, J.[*]

---

[5]  At the Evidence Code section 402 hearing the court stated, "Well, intent is the issue in this case, and the proffer that I have heard is very similar to the alleged facts here, if not, in fact, mirroring the facts here.  The probative value of the other evidence is not substantially outweighed by undue prejudice or confusion of the issues or consumption of time.  It's just two witnesses.  So the 402 is granted to allow that."

[6]  Harris admitted during his testimony that he had entered a no contest plea to charges arising from the Cuevas incident and had been placed on probation.  Contrary to Harris's argument on appeal, that the jury was aware of these facts did not make the admission of the uncharged offense more prejudicial than probative:  "[T]he prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses . . . ."  (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.)

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.