Filed 12/29/22  P. v. Shaeghi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAM SHAEGHI,<br><br>    Defendant and Appellant. | H048274<br>(Santa Clara County<br>Super. Ct. No. B1471965) |

A jury convicted defendant Sam Shaeghi of one count of committing a lewd or lascivious act on a minor and one count of simple battery (as a lesser included offense of a second charged lewd or lascivious act count).  On appeal following imposition of a three-year prison sentence, defendant argues the trial court erred by not granting a new trial based on a violation of *McCoy v. Louisiana* (2018) __ U.S. __ [138 S.Ct. 1500] (*McCoy*), and by admitting unduly prejudicial evidence of uncharged prior sexual misconduct.  Finding no error, we will affirm.

## I.    TRIAL COURT PROCEEDINGS

Defendant was charged by information with two counts of committing lewd or lascivious acts upon a minor under 14 years of age (Pen. Code, § 288, subd. (a)).  (Unspecified statutory references are to the Penal Code.)  Both counts involved the same victim, whom we refer to as Doe in the interest of privacy and consistent with her designation at trial.

## A. TRIAL EVIDENCE

### 1. Doe's Testimony

Doe was 18 at the time of trial. The charged conduct occurred in 2013 when she was 13 years old and visiting California from her home in Arizona.

One incident occurred during a barbecue at Doe's maternal grandmother's house. Music was playing from a van owned by "Sam" (identified at trial as defendant). Defendant was the long-term boyfriend of Doe's maternal aunt. After Doe informed defendant that the music had stopped, defendant went to the driver's seat to turn the music on. Defendant asked Doe to help him with the music. She was standing next to the driver's seat with the door open as defendant sat in the driver's seat. Defendant asked her to lean over him and press one of the buttons on the radio, but she refused. He then reached over, put his hand on her inner thigh, and pulled her closer to him. Doe was wearing short shorts and defendant's hand touched Doe's skin about an inch below her vagina. Doe became upset and walked away. As she walked away, she heard defendant say " 'I'm sorry. And don't be mad at me.' " She kept her distance for the rest of the barbecue.

Another incident occurred days later on a trip to Chuck E. Cheese's. Doe and two siblings went with defendant, the maternal aunt, and their children in defendant's van. Before driving to the restaurant, defendant gave Doe a beer and told her to drink it. Doe drank the beer. They all returned to Doe's grandmother's house after spending time at the restaurant. Doe helped to bring the younger children inside the house and then returned to the van to retrieve their car seats. Doe was at the back of the van working to detach the seats and had one or both feet on the ground. Defendant approached her from behind and "put his hand on [her] vagina from the back and was feeling [her] vagina from the back." She was wearing pants, so the contact occurred over her clothes. Doe felt defendant's fingers moving back and forth on her vagina. She immediately turned around and told defendant to stop, to which he responded, " 'No. It's okay. Just go along

2

with it.' " Defendant reached down to touch Doe again, but she walked away and went inside the house. Doe was uncomfortable, mad, and upset.

Doe testified that defendant was frequently drunk at family events. She did not immediately disclose the misconduct to her family because she was afraid they would not believe her. Doe eventually told her mother about defendant's actions, and the police were contacted.

### 2. Evidence of Uncharged Sexual Misconduct

Two witnesses testified about uncharged conduct by defendant, which was admitted under Evidence Code sections 1108 and 1101, subdivision (b), over defense objections. (We refer to the witnesses by their first names in the interest of privacy. Cal. Rules of Court, rule 8.90, subd. (b).)

Clarissa was 23 at the time of trial and testified about an incident that occurred when she was 19 years old. Defendant's long-term girlfriend was her paternal aunt. Clarissa attended a birthday party for her aunt. Clarissa was looking for work, and her aunt and defendant offered to pay her to clean out their vehicles. Clarissa went with them to their apartment. As she cleaned their van, defendant walked out from the apartment with a bottle of alcohol and stood next to the van drinking. Defendant started talking about topics that made Clarissa uncomfortable. He brought up Clarissa's boyfriend and asked her about the boyfriend's penis size. Defendant also asked her if she would let him "go down" on her. He told her if she was a "good girl" he would give her $200. Clarissa asked her aunt to come and get defendant because he seemed "really drunk." Defendant made Clarissa feel "really uncomfortable." Defendant left with the aunt but returned a short time later while Clarissa was cleaning the other car. Defendant tried to tickle Clarissa's arm and then touched the side of her breast. She went into the apartment and closed herself in a bedroom.

Doe's older sister Alexandria was 24 at the time of trial and testified that defendant acted inappropriately toward her when she was 19 years old. She went with

3

defendant and his family in their van to a summer fair. Her aunt drove on the way back because defendant had been drinking, and she and defendant sat in the last row of seats in the van. Defendant tried to "grab at [her] breast and caress[] certain areas of [her] body." Defendant also caressed her back and neck area. Alexandria responded by crossing her arms across her chest to block him off. Defendant also touched her upper thigh. Alexandria told him to stop. Defendant told her to "relax, to take a chill pill." She had to repeatedly tell him to stop before he left her alone.

### 3. Defendant's Testimony

Defendant testified that had been a heavy drinker during the time period when the alleged incidents occurred. Having 10 beers at an event was not unusual. He did not have clear memories of any of the incidents. He vaguely remembered Doe struggling to remove a car seat from his van on one occasion. He acknowledged touching Doe on her "waist" when she lost her balance and fell toward him. He stated his memory was not clear because he was "pretty hammered" at the time. He denied inappropriately touching Doe, Clarissa, or Alexandria. He denied feeling any sexual attraction toward Doe or Alexandria. (He was not asked about whether he was attracted to Clarissa.)

Defendant acknowledged receiving a call from Doe's mother asking questions about the incidents. He testified he did not have a clear memory of the contents of the call. The prosecutor asked defendant about certain details from the call, which had been recorded. The prosecutor asked defendant if he told Doe's mother, " 'I don't really recall, umm, umm, if, you know, if she fell into my arms and she was going into the minivan to get something. And she jumped out and fell into my arm, and I tried to grab her.' " Defendant answered, "I was just guessing." The prosecutor asked whether defendant had said, " 'I might have' " when Doe's mother asked him " 'Are you saying you didn't put hands on her private area or what do you think?' " Defendant answered, "Might have said it," but also stated that he could not remember. The prosecutor asked if defendant remembered telling Doe's mother, "I didn't put it in her, uh, you know. I

4

might have just touched, but I didn't go inside of her like that." There again, defendant testified that he might have said that, but could not remember. Defendant also acknowledged sending the following text message to Doe's mother after the call: " 'I['m] so sorry ... for touching [Doe] in her private. I'm so saddened for what I did and will never do this again.' "

## B. VERDICTS, NEW TRIAL MOTION, AND SENTENCING

In closing argument the prosecutor identified count 1 as the barbecue incident and count 2 as the incident after the visit to Chuck E. Cheese's. As to count 1, the jury acquitted defendant of the charged offense and found him guilty of the lesser included offense of simple battery. (§ 242.) The jury found defendant guilty of lewd or lascivious conduct charged in count 2. (§ 288, subd. (a).)

Defendant fired his appointed attorney after the verdict and retained private counsel. Defendant initially moved for a new trial on grounds not relevant to this appeal. He filed a supplement to that new trial motion several months later, arguing among other things that his trial counsel committed *McCoy* error by not maintaining his factual innocence about both the charged and uncharged lesser included offenses.

The trial court denied the new trial motion by written order. Defendant was sentenced to three years in prison for the lewd and lascivious conduct conviction.

## II.    DISCUSSION

## A. *MCCOY* AND DENIAL OF THE NEW TRIAL MOTION

A criminal defendant has a Sixth Amendment right to insist that his trial counsel maintains his actual innocence of a charged crime, which includes the right to prevent counsel from conceding the charged crime for strategic reasons. (*McCoy*, *supra*, 138 S.Ct. at p. 1509.) *McCoy* error is structural. The California Supreme Court has interpreted *McCoy* to include concessions about lesser included offenses. (*People v. Bloom* (2022) 12 Cal.5th 1008, 1039 (*Bloom*) ["In characterizing this choice as going to the fundamental objective of the defendant's representation, *McCoy* makes clear that the

5

decision whether to concede the defendant should be found guilty of a crime — even a lesser crime than the one the prosecution charged — is a decision that necessarily belongs to the defendant."].)  Cases finding *McCoy* error have involved defendants who made "intransigent," "unambiguous," "vociferous," and repeated objections.  (*McCoy*, at p. 1507; *Bloom*, at p. 1036.)  By contrast, "when a defendant, informed by counsel [of a strategy to admit criminal conduct], neither consents nor objects to the course counsel describes ..., counsel is not automatically barred from pursuing that course." (*Florida v. Nixon* (2004) 543 U.S. 175, 178.)  We review the denial of a new trial motion for abuse of discretion (*People v. Caro* (2019) 7 Cal.5th 463, 521); whether *McCoy* error occurred is a question of law which we review de novo.

### 1. Background

Trial counsel deferred her opening statement to the start of the defense case. Counsel began with the following:  "[Defendant] touched [Doe].  He touched her two times.  His touch was unwanted, unwelcome.  It offended her.  It made her feel uncomfortable.  And it is not a crime.  [Defendant] did not intend his touch to be a lewd act.  He was not motivated for sexual desire for [Doe], and he did not touch her with sexual desire."  Counsel blamed defendant's actions on his alcoholism.

Counsel conceded touching by defendant during closing argument as well.  She argued:  "We know that events occurred.  [Defendant] touched [Doe].  He touched her leg.  It was unwanted.  It was inappropriate.  And another touch occurred when she was loading or unloading car seats from the back of the minivan.  That was accidental.  He didn't intentionally touch her vagina.  But the acts were unwanted.  Right?  Touchings did occur."  Counsel later asked the jury to "seriously consider the lesser offense of Count 1, which is called simple battery.  Simple battery allows you to consider whether the touching was offensive, and that's it.   It doesn't matter how old the person is or whether it's a child or adult.  It doesn't matter how he meant it or she took it.  It's -- is it accepted in our community as an inappropriate act?  I would submit to you that it is.

6

Right? A battery may have occurred. But an intentional lewd, lustful act in this scenario? No. Not beyond a reasonable doubt."

Defendant moved for a new trial after firing his appointed counsel and retaining private counsel, asserting as one ground that his appointed counsel violated his federal constitutional right to maintain factual innocence. Both the motion and supporting declarations were heavily redacted, and defendant moved in the trial court to keep the records sealed. The trial court's order denying the new trial motion indicates the prosecution agreed the court "could consider and retain the unredacted filings under seal and, if the Court determined that those sealed filings did not support the motion for new trial, the materials would not have to be disclosed to the People." We denied defendant's request to file portions of the record under seal in this court because defendant's publicly filed opening brief relied on significant portions of the redacted records.

A declaration from defendant was included as evidence supporting the new trial motion. Defendant declares he "made clear that [he] was entirely innocent of the offenses with which [he] had been charged" during all communications with appointed counsel. He states he "*never* inappropriately touched [Doe]" and "*never* touched any body part of theirs that could be construed as inappropriate." He claims defense counsel "grew impatient with [his] explanations of [his] innocence and quite angry with [his] protestations against the charges; it seemed she was offended and thought [he] was challenging her expertise." Defendant states he was "surprised and dismayed to hear [appointed counsel] effectively concede [his] guilt in her opening statement to the jury. [He] understood her to be admitting to the jury that [he] had, in fact, touched [Doe], [Clarissa], and [Alexandria]." Defendant "did not believe there was any remedy" for appointed counsel's comments, but he "later asked her in private why she had told the jury things that I know are untrue." He states he "would never have admitted to having touched any of these young women, even if doing so was the best way to obtain an

7

acquittal." Defendant states that only after retaining private counsel did defendant learn about his rights under *McCoy*.

The trial court denied the new trial motion by lengthy written order, without conducting an evidentiary hearing. The trial court found that defendant "did not object either to the Court or *even to his own attorney*" on the *McCoy* issue. The court also found defendant's trial counsel did not violate *McCoy* because "counsel did not admit *any* crime or even *any element* of the charged felony for which defendant was convicted."

### 2. Analysis

*McCoy* is implicated when a defendant intransigently and unambiguously objects to trial counsel conceding guilt for a charged or lesser included offense as a matter of trial strategy. (*McCoy*, *supra*, 138 S.Ct. at p. 1507; *Bloom*, *supra*, 12 Cal.5th at p. 1039.) Defendant's declaration is ambiguous in two material respects. First, it is unclear from the declaration whether defendant denied any touching whatsoever of Doe and the others, or merely denied *inappropriate* touching. Second, it is unclear whether defendant insisted on a trial *strategy* of complete innocence, or merely insisted that he had never inappropriately touched Doe and the others.

As to the first ambiguity, defendant argues he "made explicit to his counsel his steadfast refusal to admit to having touched [Doe] (or any other alleged victim) or to having committed any criminal offense." But there is a difference between denying any touching whatsoever and denying *unlawful* touching. Defendant did not steadfastly refuse to admit any touching whatsoever. In both his statements to Doe's mother before trial and in his trial testimony he acknowledges incidental touching of Doe. Defendant testified that he could not remember the contents of a phone call between him and Doe's mother, but he did not deny making the statements the prosecutor read to him (apparently from a transcript of a recording of that call). Those statements include defendant telling Doe's mother he " 'might have,' " in response to questions about whether he touched Doe's private area. Defendant also acknowledged sending a text message to Doe's

8

mother after the call apologizing " 'for touching [Doe] in her private.' " And although defendant testified he did not have clear memories of any of the incidents, he acknowledged touching Doe on her "waist" when she lost her balance and fell toward him during the car seat incident.

Consistent with the foregoing, defendant declares he "*never* inappropriately touched" Doe or the others, and that he "*never* touched any body part of theirs that could be construed as inappropriate." Defendant suggests elsewhere in his declaration that his position was that of denying any touching whatsoever, such that he "would never have admitted to having touched any of these young women, even if doing so was the best way to obtain an acquittal." But because defendant acknowledged at least incidental touching both before trial and during his trial testimony (and we will not assume he committed perjury at trial), we interpret his declaration as denying only inappropriate touching.

As to the second ambiguity, nowhere in the declaration does defendant state he instructed his counsel not to concede his guilt for any offense. Maintaining one's innocence in discussions with counsel is different than insisting on innocence as a matter of trial strategy. We interpret the declaration as setting out defendant's position that he never inappropriately touched Doe or the others. Defense counsel's opening statement was entirely consistent with that position. Counsel acknowledged that defendant touched Doe, but described the touching as "not a crime." The opening statement therefore did not admit any crime. Defendant declares he asked counsel after her opening statement "why she had told the jury things that I know are untrue," but the declaration does not identify anything counsel said in opening that in fact conflicts with his own sworn testimony or indicate he gave any particular instruction to counsel as to trial strategy going forward. The foregoing is not the type of unambiguous and intransigent objection required to demonstrate *McCoy* error. Also consistent with a lack of unambiguous objection is that the *McCoy* issue was not raised in defendant's initial new trial motion, but rather in a supplement to that motion filed months later after his retained counsel

9

obtained the opening statement transcript.  On this record, we conclude trial counsel did not commit *McCoy* error when she countenanced the possibility that a "battery may have occurred" during closing argument.

*McCoy* is also factually distinguishable.  McCoy testified at his trial, maintaining his innocence and offering an alibi.  (*McCoy*, *supra*, 138 S.Ct. at p. 1507.)  McCoy's trial counsel then conceded guilt (*ibid.*), which directly contradicted McCoy's own alibi theory.  By contrast, defense counsel's opening statement here was entirely consistent with defendant's position that he never inappropriately touched Doe.  And the closing argument allowing for the possibility of a battery did not directly contradict defendant's position in the same manner as the closing argument in *McCoy*.

The trial court did not err in denying the new trial motion.

## B.  UNCHARGED ACTS EVIDENCE (EVID. CODE, §§ 1108, 1101, SUBD. (B))

The prosecution moved in limine to admit evidence of four uncharged acts by four separate witnesses under Evidence Code sections 1108 and 1101, subdivision (b) as evidence of intent and absence of mistake.  The trial court ultimately admitted testimony for those purposes from two of the witnesses, Clarissa and Alexandria.  The trial court found the testimony relevant to rebut the defense theory that any touching lacked sexual intent.  The court found Alexandria's testimony similar to the charged offenses in that Alexandria was Doe's sister, was 19 years old at the time of the events, and described a situation where defendant took advantage of an opportunity while drinking.  The court found Clarissa's testimony similar to the charged offenses in that she was Doe's cousin, was 19 also years old, and also described a situation where defendant took advantage of an opportunity while drinking.  The court found clear sexual intent in both uncharged acts, and found their probative value substantially outweighed the risk of unfair prejudice.

### 1.  Admissibility Under Evidence Code Section 1108

Evidence Code section 1108 provides an exception to the general rule that "evidence of a person's character or a trait of his or her character ... is inadmissible when

10

offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) Evidence that a defendant committed a sexual offense is admissible character evidence when the defendant is accused of a sexual offense, so long as the evidence is not made inadmissible by Evidence Code section 352. (Evid. Code, § 1108, subd. (a); Evid. Code, § 352 [trial court has discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."].)

A trial court "must engage in a careful weighing process" when determining whether to admit evidence under Evidence Code section 1108. (*People v. Falsetta* (1999) 21 Cal.4th 903, 916–917 (*Falsetta*).) "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, at p. 917.) We review the trial court's ruling for abuse of discretion.

Multiple factors support the trial court's decision to admit the uncharged acts testimony. Doe, Clarissa, and Alexandria were all teenagers when the misconduct occurred. Though Doe was younger (13 years old) and the other two were young adults at 19, all were substantially younger than defendant. All three were also related to defendant's long-term girlfriend. All incidents occurred in or near defendant's van. All occurred in the same time period, four or five years before trial. In all incidents, defendant took advantage of the victim being isolated or alone. (This includes the

11

incident Alexandria described as taking place in a van; although others were in the van, Alexandria and defendant were alone in the back row seat.) All the incidents involved unwanted and inappropriate touching: defendant caressed Alexandria's back and touched her thigh; he tickled Clarissa's arm and touched the side of her breast. None of the uncharged acts involved conduct substantially more prejudicial than the charged counts, as both uncharged acts described sexual battery rather than a more serious offense. An additional similarity between defendant's conduct toward Alexandria and one of the charged acts is that defendant told both Alexandria and Doe to "relax" or to "[j]ust go along with it."

Defendant contends the uncharged acts were not sufficiently similar to the charged counts because the uncharged acts involved adult victims. But all three victims were teenagers, with just a six-year gap between their ages. He points to differences between the acts, noting for example that "Clarissa's case is the only one of the four to involve [defendant] purportedly making sexually inappropriate comments." While we acknowledge the charged and uncharged acts are not identical, the distinctions defendant identifies are not so significant as to demonstrate an abuse of the trial court's discretion. Defendant faults the trial court for not excluding allegedly inflammatory details related to the uncharged acts. But the trial court's exclusion of testimony from two additional proposed witnesses shows the court was mindful of the need to balance prejudice and probative value.

### 2. Admissibility Under Evidence Code Section 1101, Subdivision (b)

Evidence Code section 1101, subdivision (b) makes admissible "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." "Evidence of

12

uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Carter* (2005) 36 Cal.4th 1114, 1147–1148.) When introduced so show similar intent, the uncharged crimes need only be sufficiently similar to the charged offenses to support the inference that the defendant " ' " 'probably harbor[ed] the same intent in each instance.' " ' " (*People v. Kipp* (1998) 18 Cal.4th 349, 371.) We review the admission of evidence under Evidence Code section 1101, subdivision (b) for abuse of discretion. (*Carter*, at p. 1148.)

For the reasons stated in the preceding section, we see no abuse of discretion in finding the challenged evidence sufficiently similar to the charged offenses to support the inference that defendant harbored a sexual intent in each instance. Defendant's arguments on this point largely mirror those we have already discussed. He suggests Doe and the other women were dissimilar because "consensual conduct with [Doe] is unlawful while it is permitted with the other[s]." But it is undisputed that none of the conduct was consensual, and we do not find the six-year age difference significant enough to compel exclusion of the testimony in light of the similarities between the charged and uncharged acts.

## C. NO CUMULATIVE PREJUDICE

Based on the foregoing analysis of defendant's contentions related to his trial, his cumulative prejudice argument necessarily fails, as there is no prejudice to accumulate.

### III.    DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Lie, J.


H048274 - *The People v. Shaeghi*