Filed 8/30/24  P. v. Galvan CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328848 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA495346) |
| v. | |
| LUDWUIN GALVAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James R. Dabney, Judge.  Affirmed.

Alex Green, Under Appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

# INTRODUCTION

A jury convicted defendant Ludwuin Galvan of two counts of forcible rape, two counts of forcible sodomy, one count of forcible sexual penetration, one count of forcible oral copulation, and one count of kidnapping. As to all counts except the kidnapping charge, the jury found true allegations that Galvan: (1) personally used a dangerous or deadly weapon, a knife; (2) tied and bound the victim; and (3) kidnapped the victim. The court sentenced Galvan to 155 years to life in prison. On appeal, Galvan contends the court abused its discretion and violated his due process rights when it admitted evidence of an uncharged sexual assault that he committed a little over a week before the charged incident. We conclude that the court properly admitted evidence of the prior uncharged sexual assault. Accordingly, admission of that evidence did not violate Galvan's due process rights. We therefore affirm.

## FACTUAL BACKGROUND

### 1. The charged sexual assault

Around midnight on May 6, 2021, Briea C. was working as a sex worker in Los Angeles when Galvan approached her in his car. Galvan told Briea that he was a nurse and asked if she could stay with him until 5:00 a.m. Briea got into Galvan's car, and they negotiated a price for Briea's services while driving to a motel.

When they got to the motel, Galvan agreed to pay Briea $400 if she stayed with him for a few hours. Briea went to a room with Galvan. Galvan asked Briea to take a shower. While Briea was in the shower, Galvan started groping her and putting his mouth on her buttocks.

After Briea got out of the shower, Galvan told her to get on the bed and lie on her stomach. Galvan straddled Briea's hips and put a knife to her throat. He told Briea that if she moved or screamed, he would leave her there "in a pool of blood." When Briea started to cry, Galvan took one of his shoelaces and tied her hands behind her back. Galvan then stuffed a washcloth in Briea's mouth and put a pillowcase over her head.

While Briea was restrained, Galvan forced his penis inside her anus. Galvan penetrated Briea's anus with his penis, and her vagina with his penis and fingers, for several hours, causing her to experience excruciating pain. Galvan also forced his penis inside Briea's mouth, dislodging one of her false teeth. Galvan did not use a condom, and Briea never consented to any sexual penetration.

Galvan told Briea, "you can handle this," and he called her a "bad bitch." Galvan told Briea that if she continued to cry, she would never see her child again. He also told her that she "was going to be number 6 on his list, another girl," and he claimed he "just killed another woman."

Briea eventually flipped herself onto her back and moved the pillowcase covering her head so that she could look at Galvan. She saw Galvan smoke drugs when he was not assaulting her. Briea also saw a blue-handled knife sitting near the bed.

At one point, Galvan walked Briea to the bathroom with her hands still bound behind her back. Briea saw that Galvan had thrown her phone into the toilet. Galvan made Briea sit on the toilet, and he sat next to her until she defecated. Galvan then forced Briea to take a shower. In the shower, Galvan licked Briea's buttocks and tried to penetrate her anus with his penis.

3

Galvan took Briea back to the bed.  He told her that she was "a good person" and that "he's going to let [her] go because he's doing [her] a favor right now because he's going to give [her] a big bag of money."  Galvan put Briea's belongings inside a pillow case and told her that he was going to take her to a boat in Santa Monica.  While Briea's hands were still bound behind her back, Galvan put his shirt over her body, a mask over her mouth, and a beanie over her head.  Before leaving the motel room, Galvan told Briea that he would kill her if she "tr[ied] anything stupid."

Galvan took Briea out of the hotel room, walked her to his car, and put her in the front passenger seat.  As he drove, Galvan groped Briea's chest and rubbed her legs.

Galvan drove for about an hour before stopping his car near a field outside the city of Oxnard.  He took Briea out of the car, turned her toward the field, and told her to run.  With her hands still bound, Briea started to run through the field.  As she ran, Briea heard the tires of Galvan's car spinning, as if they were stuck in mud.  Briea ran for about 40 minutes until she found several men standing near a truck.  The men called the police.

## 2. The investigation

When law enforcement arrived, they found Briea wearing an oversized shirt with her hands bound behind her back.  Briea told the officers where Galvan dropped her off, and she described the location of the motel where Galvan assaulted her.  The officers later found Galvan standing outside his car about half a mile from where they found Briea.  Galvan's shoes were missing their laces.

The officers collected the shoestring used to bind Briea's hands, the oversized shirt that she was wearing, a knife found in

4

Galvan's car, and a urine sample from Galvan.  The urine sample tested positive for amphetamines and marijuana.

Law enforcement also searched the motel room where Galvan assaulted Briea.  The motel's registration system showed that Galvan booked a room in his name.  Officers found beer bottles, money, sunglasses, a lighter, a pipe for smoking narcotics, and high heels inside the room.  Briea's phone was still inside the toilet.

Briea was treated at a hospital before undergoing a sexual assault examination.  She had ligature marks on her wrists, and she sustained interior and exterior trauma to her anus.  She had lacerations on the exterior of her perianal area and significant lacerations and bleeding on the inside of her rectum.  The examining nurse swabbed Briea's body, including her vagina, buttocks, and mouth.  DNA evidence obtained from those swabs matched Galvan's DNA.  Galvan's DNA also matched DNA obtained during a rape investigation in Las Vegas.

**3.     Prior sexual assault**

On April 26, 2021, Alexia G. was drinking with her boyfriend in Las Vegas.  After they got into an argument, the boyfriend drove off and Alexia started walking to a casino.  As Alexia walked by herself, Galvan pulled up next to her in his car and acted like he was an Uber driver.  Alexia got into Galvan's car and directed him to a pair of cross-streets near her home.  Alexia passed out shortly after entering Galvan's car.

Alexia woke up to Galvan tapping her with a bottle of alcohol.  She saw that they were driving on the freeway but not towards her home.  Galvan told Alexia to drink from the bottle.  Alexia said she did not want to drink, and Galvan yelled at her.  When Alexia started crying, Galvan punched her in the face.

5

After Alexia took a sip of alcohol, Galvan pulled out a gun and pointed it at her head, before pointing it at her thigh. Galvan then put a beanie over Alexia's head, covering her eyes.

Galvan drove Alexia to a house, where he took her to a bedroom and told her to take off her clothes. Alexia complied because she was scared. Galvan told Alexia to lay on the bed. He then forced her to have sex with him. After about one minute, Alexia told Galvan that she needed to throw up. Galvan allowed Alexia to go to the bathroom, but she was too nervous to vomit. When Alexia returned to the bedroom, she saw that Galvan had removed the shoelace from one of her shoes.

Galvan forced Alexia to have sex with him for about another minute before she ran back to the bathroom to vomit. When Alexia returned, Galvan told her to get dressed. Galvan put the beanie back over Alexia's eyes and led her back to the car.

Galvan dropped Alexia off in a secluded area. Galvan took Alexia's wallet, which held her house and car keys and identification card, and he told her to give him the PIN number for her debit card. Galvan told Alexia that he would go to her house and shoot her family if she told anyone about what he did to her. Galvan then instructed Alexia to run away from the car. He threatened to shoot her if she looked back.

Alexia ran to a stranger's home, where she called the police. Alexia later underwent a sexual assault examination. She also identified Galvan for the police after he tried to use her debit card at an ATM.

### 4. Galvan's testimony

Galvan testified at trial. He claimed that his sexual encounter with Briea was consensual. Galvan denied smoking methamphetamine, claiming he only smoked marijuana and

drank alcohol that night.  Galvan acknowledged on cross-examination, however, that his urine sample taken after he was arrested tested positive for amphetamines.

According to Galvan, it was Briea's idea to use his shoelace to bind her hands.  Although he tied her hands behind her back at one point during the night, he untied them before they left the motel, and she kept the shoelace.  Galvan did not know how Briea's hands became bound behind her back before the police found her.  He claimed that the shoelace depicted in one of the law enforcement officer's body camera videos did not match the shoelace that was booked into evidence.

Galvan and Briea left the motel room because she wanted to buy more drugs.  Galvan left all his money, including what he intended to pay Briea with, on the motel nightstand.  He claimed the motel manager or law enforcement stole the money.

After driving for about thirty minutes, Galvan's car got stuck in the mud because Briea "pulled [the] wheel."  Briea then opened the car door, "flipped" Galvan off, and said, "fuck you," before running away.  Galvan believed Briea wanted to steal his car because she "commented on how nice it was."

Galvan admitted that he owned a blue-handled knife, but he claimed that he left it in the motel room.  He believed law enforcement planted the knife in his car because they are "very corrupt."  Galvan also accused law enforcement of "recreating the whole alleged crime scene."

Regarding the incident with Alexia, Galvan claimed they had consensual sex in his car.  According to Galvan, Alexia panicked and took off running after they had sex.  Galvan denied ever possessing a gun, including during his encounter with

Alexia.  Galvan claimed the Las Vegas police "dropped the charges" against him.

## PROCEDURAL BACKGROUND

The People charged Galvan with two counts of forcible rape (Pen. Code,[1] § 261, subd. (a)(2); counts 1 & 6), two counts of forcible sodomy (§ 286, subd. (c)(2)(A); counts 2 & 5), one count of forcible sexual penetration (§ 289, subd. (a)(1)(A); count 3), one count of forcible oral copulation (§ 287, subd. (c)(2)(A); count 4), and one count of kidnapping (§ 207, subd. (a); count 7).  As to counts 1 through 6, the People alleged that Galvan: (1) kidnapped the victim; (2) personally used a dangerous or deadly weapon, a knife; and (3) tied or bound the victim (§ 667.61, subds. (b), (e)(1), (e)(3), (e)(5)).

A jury found Galvan guilty as charged and found true all the enhancement allegations.  The court sentenced Galvan to 155 years to life in prison.

Galvan appeals.

## DISCUSSION

Galvan contends the court abused its discretion when it admitted evidence of his uncharged sexual assault against Alexia.  He also argues the court's admission of that evidence violated his federal due process right to a fair trial.  Galvan's arguments lack merit.

Before trial, the People moved to admit evidence of Galvan's uncharged sexual assault against Alexia.  The People argued the evidence was relevant to proving the charged offenses

---

[1]  All further undesignated statutory references are to the Penal Code.

involving Briea because the uncharged incident occurred several days earlier and involved similar conduct. Galvan objected, arguing evidence of the uncharged assault would inflame the jury and confuse the issues because "there was no identification" of Galvan in the uncharged incident.

The court admitted evidence of Galvan's uncharged sexual assault against Alexia, finding it fell within the scope of Evidence Code section 1108. The court noted that the charged and uncharged assaults occurred only several days apart and the uncharged assault was less inflammatory than the charged assault. The court also explained that because evidence linked Galvan to both assaults, the People were not using the uncharged assault to bolster a weaker charged offense. The court found the probative value of the uncharged assault was not outweighed by its prejudicial value under Evidence Code section 352.

The court instructed the jury that if it found Galvan sexually assaulted Alexia, it could use evidence of that assault to find Galvan was inclined to commit sexual offenses, including the offenses charged in this case. The court also instructed the jury that it could not use evidence of the uncharged assault, without more, to find Galvan guilty of the charged offenses.

Evidence of a defendant's prior criminal acts is generally inadmissible to prove his conduct on a specific occasion. (Evid. Code, § 1101, subd. (a); *People v. Cole* (2004) 33 Cal.4th 1158, 1194.) But where a defendant is charged with a sexual offense, evidence of the defendant's past criminal sexual conduct is admissible to prove his propensity to commit sexual offenses so long as such evidence is not inadmissible under Evidence Code section 352. (See Evid. Code, § 1108, subd. (a).) Under Evidence Code section 352, a court may exclude evidence "if its probative

9

value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

To admit evidence of a defendant's past sexual offense under Evidence Code section 1108, the trial court must engage in a careful weighing process under Evidence Code section 352. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823.) Specifically, the court must consider several factors, including: (1) the nature of the defendant's past sexual offense; (2) the relevance of the past offense in proving the charged offense; (3) the remoteness of the past offense; (4) the similarity of the past offense to the charged offense; and (5) the degree of certainty the defendant committed the past offense. (*Ibid*.) The court should also consider the likelihood that presenting evidence of the defendant's past sexual offense will confuse, mislead, or distract the jurors from their main inquiry or otherwise prejudice the jurors, as well as the burden on the defendant in defending against the uncharged criminal conduct. (*Id*. at pp. 823–824.) Finally, the court should consider the availability of less prejudicial alternatives to the outright admission of the evidence of a past sexual offense, such as admitting some but not all of the defendant's past sexual misconduct or excluding irrelevant and inflammatory details surrounding that misconduct. (*Id*. at p. 824.)

We review a trial court's admission of evidence of past sexual offenses under Evidence Code section 1108 for abuse of discretion. (*People v. Dworak* (2021) 11 Cal.5th 881, 899.) As we explain, the court did not abuse its discretion when it admitted evidence of Galvan's uncharged sexual assault against Alexia.

As a threshold matter, the uncharged assault was highly relevant to proving the charged assault. The uncharged assault occurred only 10 days before the charged assault. As the California Supreme Court has explained, the probative value of prior sex offense evidence is increased where there is "close proximity in time" between the charged and uncharged offenses. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).)

Galvan also engaged in similar conduct in both incidents. He lured the victims into his car before taking them to isolated locations—a house in the uncharged assault, and a motel room in the charged assault. Galvan used violence before forcing both victims to have sex with him against their will. In the uncharged assault, Galvan punched Alexia in the face and pointed a gun at her head and legs. In the charged assault, Galvan held a knife to Briea's throat and bound her hands behind her back. There also was no question that Galvan was involved in the uncharged assault, as Alexia identified him at trial, and he testified that he had sex with Alexia.

The uncharged assault also was relevant to evaluating Galvan's credibility. That is, Alexia's testimony that Galvan forced her to have sex with him against her will and threatened her with violence undermined Galvan's testimony that he had consensual sex with Briea and that Briea willingly left the motel with him after their sexual encounter.

The court properly balanced the remaining factors under Evidence Code section 352. For the reasons just explained, evidence of the uncharged assault against Alexia was highly probative of Galvan's guilt for the charged offenses involving Briea. By contrast, the prejudicial impact of introducing evidence of the uncharged assault was low for a few reasons.

11

First, the uncharged assault involved less egregious conduct than the charged assault. Although Galvan used a gun and punched Alexia in the uncharged assault, that incident was much shorter than Galvan's assault against Briea and involved less physical violence. For instance, Galvan forced Alexia to have vaginal sex with him for only a few minutes, while he forced Briea to have vaginal and anal sex with him for several hours. Galvan physically restrained Briea throughout most of the assault and put a pillowcase over her head. Galvan also caused Briea to suffer excruciating pain, and he inflicted significant physical injuries on her, including lacerations and bleeding inside her rectum.

Second, introduction of evidence of the uncharged assault did not result in an undue consumption of time. Alexia's testimony spans about only 45 pages of the reporter's transcript, while the testimony addressing the charged offenses spans several hundred pages.

Third, introducing evidence of the uncharged assault was not likely to confuse or mislead the jurors because it is clear from the witnesses' testimony that the uncharged incident was separate and distinct from the charged incident.

We reject Galvan's claim that the prejudicial impact of the evidence of the uncharged assault substantially outweighed the evidence's probative value, because the jury likely found him guilty of the charged offenses to punish him for the uncharged assault. The record does not support this claim. As we just explained, the charged assault involved much more violent and egregious conduct than the uncharged assault. It is therefore unlikely that the jury would have found Galvan guilty of the charged offenses to punish him for the uncharged incident.

12

Moreover, the court instructed the jury that it could use evidence of the uncharged assault only for the purposes set forth in Evidence Code section 1108, and that it could not convict Galvan of the charged offenses based only on evidence of the uncharged assault. Nothing in the court's instructions allowed the jury to convict Galvan of the charged offenses for the purpose of punishing him for the uncharged incident. We presume the jury followed the court's instructions. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

In sum, the court properly admitted evidence of Galvan's uncharged sexual assault against Alexia.

Galvan next contends the admission of evidence of his uncharged sexual assault against Alexia violated his due process right to a fair trial. As Galvan acknowledges, our Supreme Court has held that Evidence Code section 1108 does not, on its face, violate a defendant's due process rights. (*Falsetta*, *supra*, 21 Cal.4th at pp. 921–922.) Further, it is well-settled that routine application of state evidentiary law does not implicate a defendant's constitutional rights. (*People v. Mills* (2010) 48 Cal.4th 158, 194.) Because the court properly admitted evidence of Galvan's uncharged sexual assault, the admission of such evidence did not infringe on his right to a fair trial. (*Ibid*.)

13

**DISPOSITION**

The judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.