Filed 8/7/25  P. v. Mejia CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082728 |
| v. | (Super.Ct.No. FWV20002406) |
| OSCAR ARTURO MEJIA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John Nho Trong Nguyen, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After hearing evidence that he molested two of his stepdaughters and his stepgranddaughter when they were children, a jury convicted Oscar Arturo Mejia of eight counts of lewd conduct with a child under 14 years old.  (Pen. Code, § 288, subd. (a).)  As to each count, the jury found true the multiple-victim circumstance allegation under the one strike law.  (Pen. Code, § 667.61, subd. (b).)  On appeal, Mejia argues that (1) CALCRIM No. 1191B, regarding the use of Evidence Code section 1108 evidence to show a propensity to commit sex offenses, violated his right to due process, and (2) the abstract of judgment contains various clerical errors regarding the description of his convictions.[1]  We direct the superior court to correct the clerical errors, but we otherwise affirm.

FACTUAL BACKGROUND

Mejia was married to R., who had four daughters, from 1998 to 2014.  During their marriage, Mejia molested two of his stepdaughters, C. and L., and his stepgranddaughter, J.  Many years later, in 2017, J. came forward to report the abuse after she gave birth to her daughter, out of a fear that something similar could happen to her.

J., who was 26 years old at the time of the trial, described several incidents of sexual abuse.  She testified that when she was about three years old, she was lying in Mejia's bed for a nap and Mejia came in his room, put a blanket over her, and rubbed her buttocks with his hand.  On one occasion near Christmas, when J. was about four years

---

[1] Unlabeled statutory citations refer to the Evidence Code.

2

old, she was alone in the living room with Mejia, singing songs while sitting on his lap, and Mejia reached into her tights and touched her vagina.

When J. was about five or six years old, she and Mejia were alone in his room on his bed, and Mejia raped her. Mejia was naked and had positioned J. on top of him so that she was straddling his torso. Mejia put his penis inside her vagina and moved her body back and forth on top of him, and J. felt a burning sensation in her vagina. Around that same time, on an evening when the family was in the living room watching a movie together, Mejia rubbed J.'s vagina with his hand underneath a blanket. Sometime before J. turned 10 years old, she and Mejia were alone in the room she shared with her siblings, sitting on the bed. Mejia rubbed her hand over his exposed penis and then pushed her head down and inserted his penis into her mouth.

Finally, J. testified about an incident that occurred in a bathtub when she was very young. At trial, her recollection was that she had been about one year old and that Mejia had rubbed her vagina with his hand while he was giving her a bath. However, the officers who interviewed J. in 2017 and 2020, respectively, both testified that she told them that she had been two years old at the time of the incident and that Mejia had inserted his finger into her vagina.

Mejia's stepdaughter C., who was 30 years old at the time of the trial, testified that Mejia molested her from the time she was seven or eight years old until she was about 12 years old. C. started playing tennis when she was about six years old, and—under the guise of giving her a sports massage to ensure "peak performance"—Mejia would "regularly" message her thighs, buttocks, and breasts while he and C. were in the garage

3

with the weight lifting equipment.  The massages continued until C. was about 12 years old.  Sometimes, Mejia would tell C. to lift up her shirt during a massage, and he would rub her breasts and tell her "that they were getting too big, and it wasn't desirable for performance."  C. testified that it "wasn't uncommon" for Mejia to kiss her after practice as a way of saying "good job."  One time, when she was about eight years old, Mejia "lingered" during a kiss and used his tongue.  On another occasion, when they were lying next to each other on Mejia's bed, watching television, Mejia rubbed her teeth with his fingers, inserted his fingers past her teeth into mouth, then used that hand to masturbate.

Mejia's stepdaughter L., who was 37 years old at the time of the trial, testified about two incidents that also occurred in Mejia's room.  The first happened when she was about 10 years old and Mejia told her to wait in his room for her mother to come home.  L. fell asleep on Mejia's bed while waiting, and she awoke to him touching her breasts underneath her shirt.  She testified that she felt "paralyzed" as he was touching her, and when it was over, she saw that her bra was on the floor, and she knew that she had not taken it off herself.  The second incident also took place on Mejia's bed, but this time L. was about 13 years old.  She had fallen asleep on the bed and awoke with Mejia's fingers inside her mouth, rubbing against her teeth, while he used his other hand to rub her vagina underneath her underwear.

Mejia testified in his own defense and said that he never inappropriately touched the victims.  He said that before he met R., he was a police officer in Virginia; and, after they got married, he became a bishop at her church.  Mejia's sister, son, and two nephews testified that they never saw him act inappropriately with the victims.

4

After the parties agreed on the jury instructions, the trial court instructed the jury with, among other things, a unanimity instruction, and a modified version of CALCRIM No. 1191B, which permitted the jurors to view evidence of Mejia's guilt of one of the charged sexual offenses as evidence of his propensity to commit such offenses and as evidence that he "was likely to commit and did commit the other sex offenses charged in this case." During closing arguments, the prosecutor explained that of the eight charges against Mejia, two involved L., three involved C., and three involved J. The prosecutor told the jury that the case against Mejia was "undercharged" because J. and C. both described more acts of molestation than there were counts against him. The prosecutor told the jurors that they all had to agree as to which act constituted which count.

The jury convicted Mejia of all eight counts of lewd conduct with a child under 14 years old and, as to each count, found that he committed the offense against multiple victims within the meaning of the one strike law. The trial court sentenced Mejia to consecutive 15-year terms for each count, for a total of 120 years in prison. Mejia appealed.

## DISCUSSION

Mejia argues that reversal is required because the propensity instruction that the trial court gave the jury, a modified version of CALCRIM No. 1191B, violated his right to due process. While Mejia acknowledges that he did not object to CALCRIM No. 1191 in the trial court, he asserts that, because the issue affects his substantial rights, he may raise this issue for first time on appeal. Although the failure to object to a jury instruction generally waives a challenge to the instruction on appeal (e.g., *People v. Hudson* (2006)

5

38 Cal.4th 1002, 1011-1012), Mejia is correct that Penal Code section 1259 permits us to "review any instruction given . . . , even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.) On the merits, we conclude that Mejia's challenge fails.

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatorro*), citing § 1101, subd. (a).) "This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity (§ 1101, subd. (b)), and does not affect the admissibility of evidence regarding the credibility of a witness (*id.,* subd. (c))." (*Villatoro*, at p. 1159.) "The Legislature has also created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses (§ 1108, subd. (a)), and domestic violence, elder or dependent abuse, or child abuse (§ 1109, subd. (a)(1)–(3))." (*Villatoro*, at p. 1159.) As relevant here, section 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), our Supreme Court upheld section 1108 as constitutional, observing that the provision "was intended in sex offense cases to . . . assure that the trier of fact would be made aware of the defendant's other sex

6

offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, at p. 911.) The Court explained that, by enacting section 1108, the Legislature determined that: "By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Falsetta*, at p. 915.)

In *People v. Reliford* (2003) 29 Cal.4th 1007 (*Reliford*), our Supreme Court held that, despite the fact that section 1108 makes "no mention of inferences," the statute permits jurors to "infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses," and that jurors "may—but are not required to—infer from this predisposition that the defendant was likely to commit and did commit the charged offense." (*Reliford*, at pp. 1012–1013.) In *Villatoro*, our Supreme Court held that section 1108 applies to evidence of both uncharged *and charged* sex offenses, and the Court upheld a version of CALCRIM No. 1191B that was modified to apply to other charged sex offenses. (*Villatoro*, *supra*, 54 Cal.4th at p. 1162.)

For our purposes, the instruction upheld in *Villatoro* is identical to the instruction the trial court used here, which states: "The People presented evidence that the defendant committed the crime of lewd or lascivious act with a child under 14 years, in violation of Penal Code section 288(a), as charged in Counts 1, 2, 3, 4, 5, 6, 7, and 8. [¶] If the People have proved beyond a reasonable doubt that the defendant committed one or more

7

of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt."

In *Villatoro*, the Court held that this instruction did not lessen the prosecution's burden of proof or otherwise violate the defendant's due process rights. Specifically, the Court concluded that the instruction does "not permit the jury to convict [a] defendant of one count based simply on its guilty 'verdict' on any other counts." (*Villatoro*, *supra*, 54 Cal.4th at p. 1165.) The Court explained: "It is not the verdict itself, but rather the jury's factual finding that defendant has committed a sex offense, that the jury relies on to draw an inference of disposition or propensity. Specifically, like an instruction based on uncharged sex offenses, the modified CALCRIM No. 1191 explained to the jury that if it decided that defendant had committed a charged sex offense, 'from that evidence' it could conclude that defendant had a disposition to commit the other charged sex offenses, and that based on that decision, the jury could also conclude that defendant was likely to and did commit the other charged sex offenses." (*Ibid.*) The Court further reasoned that because the instruction "clearly [tells] the jury that all offenses must be proven beyond a

8

reasonable doubt, even those used to draw an inference of propensity," there "was no risk the jury would apply an impermissibly low standard of proof." (*Id.* at p. 1168.)

In arguing that the instruction violated his due process rights by reducing the prosecution's burden of proof, Mejia acknowledges that the holding of *Villatoro* is binding on this court. He contends that his challenge is different from the challenge in *Villatoro* because his claim is that the instruction permitted the jury to make "irrational" inferences based on the "unique facts of this case." Specifically, he argues that the prosecution presented evidence that he committed various acts of molestation upon the victims that ranged in severity from an inappropriate massage to rape and that it would be irrational to infer a propensity to commit rape from the fact that he touched one of the victim's inappropriately during a massage.

But that argument, too, is foreclosed by binding precedent. As the Court explained in *Falsetta*, " 'evidence of any prior sexual offenses is *particularly probative*' " of a defendant's propensity to commit such offenses because " 'the willingness to commit a sexual offense is not common to most individuals.' " (*Falsetta*, *supra*, 21 Cal.4th at p. 912, italics added.) For that reason, a juror's " ' "consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense" ' " constitutes a " ' "*rational* assessment." ' " (*Ibid.*, italics added.) In other words, *Falsetta* rejects the notion that it is too speculative or irrational to infer that a person who has committed sex offenses is predisposed to commit such offenses. Indeed, as *Falsetta* observed, evidence that a defendant has

9

committed other sex crimes has, if anything, " ' "*too much*" ' " probative value.  (*Id.* at p. 915.)

Moreover, we disagree with Mejia's characterization of the charged offenses as being too dissimilar or constituting too "broad" an "array" of acts to reasonably support a propensity inference.  Although the charged offenses involved different lewd acts, each of those acts were committed close in time to one another, against similar victims, and under similar circumstances.  Each of the victims were young members of Mejia's household and all of the abuse took place in the family home, with many of the offenses occurring on Mejia's bed.  Most significantly, both C. and L. described how Mejia would put his fingers in their mouth, rub their teeth, and use their saliva as lubrication to touch either himself or them.  Where, as here, the sex offenses presented to the jury are "similar in character" and "not unduly remote," those offenses are " '*extremely probative* of appellant's sexual misconduct when left alone with young female relatives.' "  (*Falsetta*, *supra*, 21 Cal.4th at p. 919, italics added, quoting *People v. Soto* (1998) 64 Cal.App.4th 966, 991.)  As was the case in *Villatoro*, "the victims' accounts of their respective [abuse] . . . were strikingly similar in various respects" and, as a result, we conclude that the victims' testimony about the abuse was "highly probative" of Mejia's "propensity to commit such crimes."  (*Villatoro*, *supra*, 54 Cal.4th at pp. 1168-1169.)  We therefore reject Mejia's claim that CALCRIM NO. 1191B allowed the jury to make "irrational permissive inferences."

Next, Mejia argues that the trial court erred by failing to give an instruction on uncharged crimes evidence in light of J.'s testimony about the bathtub incident.  Mejia

has forfeited this argument by failing to support it with analysis and citation to supporting authority.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)  But, in any event, the argument fails because the incident was a *charged* offense.  Mejia claims that because J. testified that she was about one year old when it happened, the incident falls outside the date range the People identified in their charges.  But the People also presented evidence, in the form of testimony from two police officers, that J. reported years earlier that the incident occurred when she was two years old.  The officers' testimony brings the incident within the charged date range.  Moreover, and as the court instructed the jury, although "[i]t is alleged that the crimes charged in this case occurred within certain date ranges," the People "are not required to prove the exact date on which each of the crimes took place, but only that it happened within or reasonably close to the specified date range."  Mejia's claim that the trial court should have given an instruction on uncharged crimes therefore fails.

Finally, Mejia argues, and the People agree, that the abstract of judgment contains clerical errors regarding the description of his convictions.  We agree with the parties that the abstract of judgment contains the following errors.  First, the abstract states that all eight counts of lewd conduct are based on violations of section "288(A)-F," when in fact the convictions are based on violations of section 288, subdivision (a) only.  Second, in the column entitled "year crime committed," the abstract incorrectly states that each count was committed in 2020 when in fact the counts took place over a period of years spanning from 1996 to 2006.  An appellate court may order the correction of clerical errors (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187), and we do so here.

11

DISPOSTION

The trial court shall correct the abstract of judgment to reflect that all eight counts are based on violations of Penal Code section 288, subdivision (a), and to reflect that counts 1 through 3 occurred between 1999 and 2004; counts 4 through 6 occurred between 1998 and 2006; and counts 7 and 8 occurred between 1996 and 1999. The court shall forward a certified copy of the corrected abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


CODRINGTON
Acting P. J.


RAPHAEL
J.


12