Filed 9/25/25  P. v. Maravilla CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C101114 |
| Plaintiff and Respondent, | (Super. Ct. No. MAN-CR-FE-2021-0009417) |
| v. | |
| JESUS E. AREVALO MARAVILLA, | |
| Defendant and Appellant. | |

Defendant Jesus E. Arevalo Maravilla stabbed the man who was having a relationship with his wife.  A jury found defendant guilty of first-degree premeditated murder and burglary.  On appeal defendant argues there is not sufficient evidence of premeditation and deliberation to sustain the jury's verdict as to the murder count.  We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant and A.V. (to protect their privacy, we refer to the victims and witnesses by their initials -- Cal. Rules of Court, rule 8.90, subd. (b)(4), (10)) were together for 13 years and shared a daughter.  In approximately May 2021, A.V. began a relationship with the victim J.P.  Initially the two exchanged messages, and they first met in person in July.

1

Defendant became aware of the relationship in early August. He demanded A.V. unlock her phone. After refusing, defendant threw her onto a couch and choked her until she relented and unlocked the phone. Defendant found text messages between A.V. and J.P. and threatened to kill both A.V. and J.P. A.V. left the house, "to prevent [defendant] from doing something" else. Defendant and his daughter remained in the house. Ultimately, A.V. moved into J.P.'s apartment but stayed in contact with defendant so they could co-parent their daughter.

Defendant obtained a picture of J.P. by searching through A.V.'s phone. Defendant texted A.V.'s son a picture of J.P. and indicated A.V. was in a relationship with J.P. Defendant also tracked A.V.'s phone to J.P.'s apartment complex. Internet searches discovered on defendant's phone indicated he searched for apartment complexes near where the victim lived prior to the murder.

On the day of the murder, defendant asked A.V. to pick up their daughter from school. A.V. picked up her daughter and took her shopping. Defendant texted A.V. at 7:00 p.m. and asked her to watch their daughter because he "had something to do" that night. Later that evening defendant drove to J.P.'s apartment and parked away from the front entrance of the apartment complex. He asked a woman at the apartment if she knew where J.P. lived, and she gave defendant directions to J.P's unit.

Defendant knocked on the door at J.P.'s apartment and J.P.'s roommate answered the door. Defendant asked to see J.P. The roommate told J.P., who was on the balcony and talking to A.V. on the phone, someone was there to see him and then went back to her room. A.V. heard defendant's voice and told J.P. not to let defendant into the apartment. A.V. heard J.P. greet defendant but he abruptly hung up. The roommate heard a loud noise and came out of her room. She saw defendant and J.P. on the balcony. J.P. told the roommate to call the police. The roommate witnessed defendant making stabbing motions toward J.P.

2

Defendant attacked J.P., stabbed him 159 times, killing him. After the attack, the roommate saw defendant leave the apartment with a knife in his hand. One neighbor heard defendant and J.P. argue at the time of the attack, other neighbors saw defendant leaving the apartment complex with the knife and covered in blood. Defendant discarded the knife on a roof, and police later recovered the knife. Video surveillance footage from the apartment complex also showed defendant entering and leaving the complex before and after the murder.

Defendant fled to the home of his ex-wife and his other daughter, who he had not seen in many years. He admitted to his daughter that he had killed a man and blamed his daughter and ex-wife because they refused to let him back into their life. Defendant's daughter called the police.

The police came to the home and defendant admitted to officer James Crawford that he killed someone with a knife. Defendant explained that a man had "molest[ed]" his wife and that he told the man to stop, warning him "you're going to pay" after the man laughed at defendant. Defendant said he killed the man after the victim laughed at him.

Police took defendant to the hospital to treat wounds he sustained during the attack. At the hospital defendant told a nurse: J.P. laughed at him, defendant told J.P. he was "going to pay," and admitted to killing J.P. Police officer James Crawford was present at the time and his body camera was recording. Defendant's statement was played at trial.

Phone records confirm defendant called three people after the attack. He first called A.V. and admitted to killing J.P. He told A.V., "I told you and I warned you, I wasn't going to be made fun of." Defendant called his nephew and told him, "[I]t was done," clarifying, "the man that is trying to be with another's woman is dead, something like that." J.P.'s sister called defendant while her brother recorded the conversation. She asked him if he killed J.P. and defendant admitted he did. Defendant explained he

3

"warned him" and said the reason he went to the apartment was to "[gouge] his eyes out . . . so he could not see any other women." His sister gave the phone to her brother and defendant bragged to him that he "left [J.P.] like a drain . . . [when he] took out his guts," and that he had no regrets about the killing. At trial, defendant's sister testified defendant had claimed he talked to J.P. five times prior to the murder, telling him to stop seeing his wife. Defendant said he was angry because he had previously warned A.V. and J.P. not to make fun of or mock him.

An information charged defendant with murder (Pen. Code, § 187, subd. (a), statutory citation references that follow are to the Penal Code), first-degree residential burglary (§ 459), and a sentence enhancement, as to both counts, for personal use of a knife. It also alleged several aggravating factors (Cal. Rules of Court, rules 4.421(a)(1) [great violence/bodily harm], (a)(2) [weapon use], (a)(3) [particularly vulnerable victim], (a)(8) [planning/sophistication], 4.421(b)(1) [danger to society]).

Defendant did not present any evidence at trial. The jury found defendant guilty on all counts and found both enhancements true. The trial court found the aggravating factors true. It imposed an aggregate sentence of 26 years to life.

Defendant appeals.

## DISCUSSION

Defendant claims there was insufficient evidence of premeditation and deliberation to sustain the jury's verdict. He argues he acted under a prolonged period of provocation based on his wife's ongoing infidelity, confronting then killing J.P. after the man mocked him.

This court's role in reviewing a challenge to the sufficiency of evidence is limited. (*People v. Smith* (2005) 37 Cal.4th 733, 738.) We examine the entire record to assess "whether *any* rational trier of fact" could have found defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Thus, "we review

4

the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*Ibid.*; see also *People v. Lucero* (2019) 41 Cal.App.5th 370, 414.)

The unlawful killing of a human being with malice aforethought is murder. (§ 187, subd. (a).) Our Legislature has divided murder into two degrees: first or second. (See § 189, subds. (a)-(b).) According to the statutes defining murder, murder is in the first degree if done using certain methods not applicable here; if done during the commission of certain felonies not relevant here; or if it is "willful, deliberate, and premeditated." (§ 189, subd. (a).) "All other kinds of murders are of the second degree." (§ 189, subd. (b).)

A murder verdict based on a finding of willfulness, deliberation, and premeditation requires more than a showing that defendant had an intent to kill. (*People v. Disa* (2016) 1 Cal.App.5th 654, 664; *People v. Gomez* (2018) 6 Cal.5th 243, 282; *People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) " 'In the context of first degree murder, " 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action' " ' (*People v. Lee* (2011) 51 Cal.4th 620, 636 [ ])." (*People v. Smith* (2018) 4 Cal.5th 1134, 1164; *People v. Salazar* (2016) 63 Cal.4th 214, 245; *People v. Potts* (2019) 6 Cal.5th 1012, 1027.) Thus, "[a]n intentional killing is premeditated and deliberate if it occurred as the result of

5

preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543 (*Stitely*); see also *Potts* at p. 1027.)

In considering if there was premeditation and deliberation, "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (*People v. Thomas* (1945) 25 Cal.2d 880, 900.)

In *People v. Anderson* (1968) 70 Cal.2d 15, 26 our Supreme Court provided guidance regarding, "[t]he type of evidence . . . sufficient to sustain a finding of premeditation and deliberation." The Court stated the evidence, "falls into three basic categories: (1) facts about how and what defendant did prior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed' [citation]; (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)." (*Id.* at pp. 26-27, italics omitted.)

The Court observed, "[a]nalysis of the cases will show that this court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (*Anderson*, *supra*, 70 Cal.2d at p. 27.) "Evidence in only one of" the *Anderson* categories, "most often is insufficient." (*People v. Alcala*

6

(1984) 36 Cal.3d 604, 626 (*Alcala*), superseded by statute on other grounds as recognized by *People v. Falsetta* (1999) 21 Cal.4th 903, 911.)

We note, however, that "[t]he *Anderson* factors are not the exclusive means for establishing premeditation and deliberation. (*People v. Perez* (1992) 2 Cal.4th 1117, 1125 [ ].)" (*People v. Lenart* (2004) 32 Cal.4th 1107, 1127; *Young* (2005) 34 Cal.4th 1149, 1183.) The *Anderson* categories are meant to be "descriptive, not normative." (*People v. Davis* (1995) 10 Cal.4th 463, 511; *People v. Elliot* (2005) 37 Cal.4th 453, 470-471.) And "*Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069; *People v. Perez, supra,* 2 Cal.4th at p. 1125.) Additionally, the *Anderson* factors, "need not be present in any particular combination to find substantial evidence of premeditation and deliberation," (*Stitely*, *supra*, 35 Cal.4th at p. 543; *People v. Booker* (2011) 51 Cal.4th 141, 173), and they need not be "accorded a particular weight" (*People v. Bolin* (1998) 18 Cal.4th 297, 331-332).

We conclude substantial evidence supports the jury's finding that defendant committed the murder with premeditation and deliberation.

Defendant claims the only proof of planning and motive demonstrates defendant meant to scare away his wife's lover. We disagree.

Upon learning that his wife was involved with J.P., defendant told his wife that he was going to kill her and J.P., warned the victim five times to leave his wife alone, researched and found a picture of J.P. on his wife's phone, searched on his phone for apartment complexes where the victim lived, tracked his wife's location to J.P.'s residence, asked his wife to watch their daughter on the night of the murder because he "had something to do," and when he arrived at the apartment complex he parked away from the front gate of the complex. Each of these items demonstrate defendant's planning activities. Defendant's possession of the knife prior to going to J.P.'s apartment

7

is also indicative of planning. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 [a defendant bringing a knife into the victim's home is evidence of planning]; *People v. Sanchez* (1995) 12 Cal.4th 1, 34 [same].)

There is ample evidence of defendant's motive to murder the victim because J.P. had started a relationship with defendant's wife, which defense counsel conceded the prosecution proved at trial.

The manner of killing and defendant's post-murder admissions to multiple people show premeditation and deliberation. We reject defendant's argument that the evidence only demonstrates an "inflamed response to the additional provocation of finding the man on the phone with his wife, then laughing at [defendant]'s demand that he end the affair." Defendant stabbed the victim 159 times and specifically targeted the victim's eyes, which he touted as the reason he went to the apartment in two separate phone calls after the murder to his nephew and J.P.'s sister and brother. After the crime, defendant discarded the murder weapon on the rooftop of the apartment complex. He then went to his ex-wife's home and admitted to his daughter that he killed J.P.

Defendant's statements after the murder imply premeditation, he told his nephew, "[I]t was done," and that he "had done what he had to do." Defendant admitted to a nurse, with a police officer present, that he told the victim, "You're going to pay." He also told his wife and the victim's brother that "no one makes fun of [him]," implying defendant deliberately killed J.P.

The evidence here was more than substantial evidence supporting the jury's finding of premeditation and deliberation.

DISPOSITION

The judgment is affirmed.

                                        _____

                                        HULL, Acting P. J.

We concur:

_____

KRAUSE, J.


_____

WISEMAN, J.*

---

\*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.